James **LEGATE**, Appellant,

v.

**STATE** of Texas, Appellee.

No. 04–99–00634–CR.

Court of Appeals of Texas, San Antonio.

May 30, 2001.

Ray Taylor, Taylor & Correa, P.C., San Antonio, for Appellant.

Mary Beth Welsh, Assistant Criminal District Attorney, San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF and CATHERINE STONE, Justices.

Opinion by: PHIL HARDBERGER, Chief Justice.

James Legate ("Legate") was convicted of murder and sentenced to 99 years imprisonment. In his brief, Legate complains that the trial court erred by: (1) admitting hearsay statements; (2) not pro-

viding the defense grand jury testimony for impeachment purposes; (3) failing to allow adequate time to investigate recently discovered evidence; and (4) admitting prejudicial autopsy photographs. Legate also complains that the State lost a witness's exculpatory statement. We overrule each of these complaints and affirm the trial court's judgment.

## FACTS

Eddie Garcia ("Garcia") and Pedro Zamora ("Zamora") were partners in the Mexico Que Nice nightclub. The nightclub was losing money under Zamora's management, partly due to Zamora's habit of giving away free drinks and providing passes for friends so that they could avoid paying the cover charge. As a result, Garcia fired the entire nightclub staff, hired all new employees, and began to take money from Zamora's paychecks as compensation for the free drinks Zamora continued to give away. Tensions escalated between the two men. Eventually, Garcia planned a meeting to inform Zamora of Garcia's intent to force Zamora out of the business. Garcia was murdered before the meeting took place.

The murder occurred at Garcia's office, located next to a club called "Players." According to witnesses, Legate arrived at Players approximately four hours before Garcia was killed. He carried a briefcase and wore his hair in a ponytail. Legate sat drinking beer and staring out of the club window for several hours. Later that afternoon, Legate closed the blinds because the "sun was hitting his eyes," but left almost immediately thereafter, taking his briefcase with him. Moments later, gunshots were fired next door in Garcia's office. The Players bartender saw Legate running away from the office. Several other witnesses also testified that they saw Legate running from the vicinity of Garcia's office.

Legate was arrested shortly thereafter because he matched the suspect's description and was acting nervous in the presence of the police officer. Legate claimed that he had just come from a nearby Burger King; however, witnesses inside the Burger King stated that Legate had walked in the door and immediately back outside. In addition to having alcohol on his breath, Legate was sweating profusely. Near the location of the shooting, an abandoned briefcase similar to the one witnesses reported Legate carrying, was found with a handgun covered in electrical tape lying inches away. The handgun was later determined to be the murder weapon.

A jury convicted Legate of Garcia's murder, and Legate timely filed this appeal.

## HEARSAY STATEMENTS

In his first point of error, Legate contends that the trial court erroneously admitted hearsay statements concerning the existence of a conspiracy. The statements Legate complains of were made by Juan, or Jesse, Hernandez ("Hernandez"). Hernandez testified that prior to Garcia's death Zamora met with Legate and a few others on the patio of the nightclub owned by Zamora and Garcia prior to Garcia's death. Hernandez testified that he overheard Zamora tell Legate and the others that he [Zamora] needed protection from an lawyer (or "abogado" in Spanish) who was trying to take over Zamora's ownership in the nightclub, and that Zamora wanted the lawyer hurt. Hernandez, as well as a Bexar County interpreter, indicated in their testimony that in Spanish, the term "abogado" is often used to denote a practicing attorney or someone who does things for a person. Zamora told Legate that he wanted Legate to protect him from the lawyer who officed close to Players

nightclub. Hernandez did not observe Legate saying anything to Zamora at the time, but Legate later told Hernandez that he was going to try to "work for" Zamora. Hernandez testified that Legate was not making enough money at his regular job, and, therefore, began to work as a bodyguard for Zamora, to "do some part-time for him, nights, hang around [Zamora], watch [Zamora's] back." According to Hernandez, around the time of the meeting at the nightclub and close to the time Garcia was killed, Legate asked whether Hernandez could get a gun for him. Legate told Hernandez the gun was for "protection." Hernandez furnished Legate a gun and testified that the weapon he provided Legate was very similar to the murder weapon—the only difference being that the murder weapon was wrapped in tape.

The trial court admitted Hernandez's statements as non-hearsay as either an admission by a party opponent, or a statement made by a co-conspirator during the course and furtherance of a conspiracy.

### 1. Admission of a Party Opponent

 Rule of Evidence 801(e)(2)(B), provides, in part, that an out of court statement is not hearsay if it is: (1) an admission by a party opponent; (2) offered against that party; and (3) a statement of which the party has manifested an adoption or belief in its truth. TEX.R.EVID. 801(e)(2)(B). The proponent bears the burden of demonstrating to the trial court by a preponderance of the evidence that the statement meets the criteria for an admission by a party opponent. *Meador v. State*, 812 S.W.2d 330, 333 (Tex.Crim. App.1991). In admitting the testimony regarding the statement, the trial court implicitly finds that the proponent has carried its burden. *Alvarado v. State*, 912 S.W.2d 199, 215 (Tex.Crim.App.1995). Only upon finding an abuse of discretion

may an appellate court disturb the trial court's ruling. *Id.*

 Adoption of statements may be manifested in actions, responses, or acquiescence. *Trevino v. State*, 991 S.W.2d 849, 853 (Tex.Crim.App.1999); *Cantu v. State*, 939 S.W.2d 627, 635 (Tex.Crim.App.1997); *Tucker v. State*, 771 S.W.2d 523, 536 (Tex. Crim.App.1988). There is sufficient support for the trial court's finding that Legate had adopted the statements Zamora made regarding the lawyer through his actions, verbal and non-verbal. After the nightclub meeting, Legate stated that he was working for Zamora, specifically watching Zamora's back. Legate also acquired the murder weapon after the conversation at the nightclub. While these statements and actions are not dispositive proof that Legate murdered Garcia, they sufficiently establish adoption for purposes of admitting Hernandez's testimony regarding the statements made by Legate and Zamora. *Trevino*, 991 S.W.2d at 853; *Alvarado*, 912 S.W.2d at 215.

### 2. Statement by a Co–Conspirator

 Alternatively, the trial court admitted Hernandez's testimony because it was a statement made by a co-conspirator. TEX.R.EVID. 801(e)(2)(E). In reaching this conclusion, the trial court was required to find that the evidence showed beyond a preponderance of a doubt that: (1) there was a conspiracy; and (2) the statement was made during the course of and in furtherance of the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).

 A conspiracy has been defined as "[w]hat one does pursuant to their common purpose, all do, and as declarations may be such acts, they are competent against all." *Meador*, 812 S.W.2d at 333. Proof of a conspiracy may be inferred

from circumstantial evidence. *Roy v. State*, 608 S.W.2d 645, 651 (Tex.Crim.App. 1980). The Texas Court of Criminal Appeals has determined that a conspiracy is evidenced provided the record shows that: (1) at the time of the defendant's statement, the co-conspirator was participating in the conspiracy in which the defendant also participated or later joined; and (2) the statement was made in furtherance of the conspiracy. *Ward v. State*, 657 S.W.2d 133, 136 & 137 (Tex.Crim.App.1983); *Rodriquez v. State*, 552 S.W.2d 451, 454 (Tex. Crim.App.1977). A trial court has discretion to determine admissibility of alleged hearsay statements under the co-conspirator rule. *Howard v. State*, 962 S.W.2d 119, 123 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd); *Vasquez v. State*, 902 S.W.2d 627, n. 3 (Tex.App.—El Paso 1995), *reversed and remanded on other grounds*, 919 S.W.2d 433 (Tex.Crim.App.1996); *Murdock v. State*, 840 S.W.2d 558, 562 (Tex.App.—Texarkana 1992, pet. ref'd).

■ The record contains support for the trial court's finding that Zamora and Legate conspired to "hurt" Garcia in order to prevent Zamora from losing his share of the nightclub. Zamora stated that he wanted Legate to protect him from the lawyer, or "abogado," officed close to Players nightclub and that he wanted the lawyer hurt. While Garcia was not a lawyer, he was a successful businessman in the community. The record reflects that while the term "abogado" is used to describe a lawyer, it is also used more loosely to describe someone who draws up documents or helps others out. As an investor and the person who had the management contract for the nightclub, Garcia could have been termed an "abogado" even though he was not actually an attorney. There is also evidence that Legate asked Hernandez to get a gun for him and that the gun Hernandez subsequently gave Le-

gate was very similar to the murder weapon. In light of this evidence, Hernandez's testimony is admissible under the co-conspirator rule. *Bourjaily*, 483 U.S. at 175, 107 S.Ct. 2775; *Rodriguez*, 896 S.W.2d at 205; *Meador*, 812 S.W.2d at 333.

### 3. Rule 403

■ In his second point of error, Legate argues that Hernandez's testimony should not have been admissible because its prejudicial value outweighed any probative value. Relevant evidence is admissible, however, unless the probative value is substantially outweighed by the danger of unfair prejudice to the defendant. TEX. R.EVID. 403; *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex.Crim.App.1991).

Eyewitnesses identified Legate as leaving Garcia's office. Garcia's murder was linked to Legate and the abandoned briefcase found lying close to the murder weapon. Hernandez's testimony was highly probative in explaining Legate's motive, and is not particularly prejudicial.

Legate's first and second points of error are overruled.

### GRAND JURY TRANSCRIPT REQUEST

Legate alleges that the trial court committed reversible error in denying his request for a complete copy of Hernandez's grand jury testimony for impeachment purposes.

■ The trial court has considerable discretion concerning production of grand jury testimony. *McManus v. State*, 591 S.W.2d 505, 523 (Tex.Crim.App.1979), *overruled on other grounds, Reed v. State*, 744 S.W.2d 112 (Tex.Crim.App.1988). The Texas Code of Criminal Procedure provides: "(a) The proceedings of the grand jury shall be secret" and "(d) The defendant may petition a court to order the disclosure of information otherwise made secret by this article ... [upon] a showing

**804**

by the defendant of a particularized need." Tex.Code Crim.Proc.Ann. art. 20.02 (Vernon 2000); *see Bynum v. State*, 767 S.W.2d 769, 782 (Tex.Crim.App.1989). The totality of the circumstances must be examined when determining whether a particularized need exists. *Bynum*, 767 S.W.2d at 781. A particularized need is not shown simply because the requested testimony pertains to a key prosecution witness, or that there is a "need" to locate inconsistencies in the witness's testimony. *Bynum*, 767 S.W.2d at 783.

The trial court examined the grand jury transcripts for exculpatory material. Upon failing to find any such testimony, the trial court refused to turn over the transcripts to defense counsel. Defense counsel cross-examined Hernandez extensively regarding his incomplete testimony to the police and his own criminal background. Defense counsel further made clear to the jury that Hernandez was offered immunity for his testimony, and it was not until this offer that Hernandez was willing to provide incriminating evidence against Legate and Zamora.

Defense counsel fully cross-examined Hernandez, effectively questioning his credibility. Legate has not demonstrated that the grand jury testimony was needed to further question Hernandez's credibility. The trial court reviewed the transcripts and determined no exculpatory material existed that would assist in cross-examining Hernandez. Because Legate failed to demonstrate a particularized need for the grand jury transcripts, we overrule Legate's third point of error.

### Missing Exculpatory Statement

■ Legate contends that he was denied his right to a fair trial because the State lost an exculpatory statement made by Hernandez, thereby preventing Legate from using the statement for impeachment purposes at trial. According to Legate, Hernandez gave two statements to the police. The prosecutor initially testified during a pre-trial hearing that Hernandez gave two contradictory statements prior to testifying before the grand jury. Hernandez gave one written statement to the police dated October 8, 1998. This statement was furnished to the defense. On November 7, 1998, Hernandez was approached by the police again, but refused to answer any questions. There is some indication, however, that the police were able to acquire additional information from Hernandez at a later date. A police detective testified that Hernandez was not completely forthcoming during his October interview, but "substantial information" was "eventually obtained from him." Whether this additional statement was ever reduced to writing is not clear. The State later represented to the trial court that there was only one written statement, and that the prosecutor's earlier testimony that there were two written statements was an error.

■ Suppression of exculpatory or even favorable evidence to an accused by the State violates due process where the evidence is material to either guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 86, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The existence of good faith or bad faith on the part of the prosecution is irrelevant. *Id.* In order to demonstrate that Legate's due process rights were violated, he must show that: (1) the state failed to disclose evidence; (2) the evidence was favorable to Legate; and (3) the fact that the evidence was undisclosed creates a probability sufficient to undermine the confidence in the outcome of the proceeding. *Thomas v. State*, 841 S.W.2d 399, 407 (Tex.Crim.App. 1992). A conviction will be overturned only if the evidence may exonerate the defendant. *Brady*, 373 U.S. at 86, 83 S.Ct.

1194; *Crutcher v. State*, 481 S.W.2d 113, 116–17 (Tex.Crim.App.1972).

■ Even in the face of deliberate concealment by the prosecution or its agents, there is no due process violation unless the concealed evidence is material, and when examined as part of the entire record, creates a reasonable doubt concerning the defendant's guilt that would not otherwise exist. *Ex parte Salinas*, 660 S.W.2d 97, 100 (Tex.Crim.App.1983). Impeachment evidence has been deemed material because, upon disclosure, it may make a difference in the trial's outcome. *O'Rarden v. State*, 777 S.W.2d 455, 458 (Tex.App.— Dallas 1989, pet. ref'd).

The record is unclear whether Hernandez gave a second statement, and if he did, whether it was reduced to writing, or that it conflicted with Hernandez's grand jury or trial testimony. Without any proof that a second statement existed, much less whether it conflicted with Hernandez's earlier statement, no reversible error is shown. We overrule Legate's fourth point of error.

### ADEQUATE TIME TO INVESTIGATE NEW EVIDENCE

■ During the latter part of the trial, defense counsel received new and possibly exculpatory evidence. Legate asserts that the trial court abused its discretion in refusing to allow defense counsel time to adequately investigate such evidence. Defense counsel announced to the court that: (1) attorney Ed Dineri notified defense counsel that Dineri's client, Charles Rodriguez ("Rodriguez"), was willing to testify that someone had approached him about putting a "hit" on Garcia; (2) the District Attorney's office had just informed defense counsel that the individual that requested the "hit" was supposed to meet Garcia the night of the shooting; and (3) the District Attorney's office had just informed defense

counsel that numerous individuals had gone to Garcia's office immediately after the shooting and removed documents, possibly exculpatory in nature. Defense counsel asked the trial court for a continuance to investigate these matters.

The trial court heard evidence in camera from Rodriguez. Both the State and the defense were permitted to question Rodriguez on two occasions. In addition, Assistant United States Attorney Bert Richardson ("Richardson") testified that he was familiar with Rodriguez's claims regarding possible suspects in Garcia's murder. According to Richardson, Rodriguez named Albert Bustamante, a former United States Congressman who had spent time in a federal penitentiary, among others. Richardson testified that when he spoke to Rodriguez, he concluded after only a few minutes that Rodriguez was not credible and was motivated to make these accusations in order to stop the pending revocation of his supervised release, or to receive a reduced sentence. Richardson was unaware as to whether this information had been pursued by the FBI or the DEA, or whether the Bexar County District Attorney's office was ever notified of Rodriguez's claims.

After hearing Richardson's testimony, the trial court overruled defense counsel's motion for continuance and ordered the trial to continue. However, defense counsel was given until 1:30 p.m. the following day to investigate the identity of the individual Rodriguez said was to meet Garcia the night of the murder.

Under these facts, the trial court did, to some degree, grant Legate's oral motion for continuance by allowing both Rodriguez and Richardson to testify in camera regarding the new and unexpected information. Additionally, the trial court allowed defense counsel half a day to investigate the allegation that there was someone

who was supposed to meet with Garcia the night he was killed. Given that these proceedings occurred mid-trial, we do not believe the trial court abused its discretion in denying Legate a longer continuance. *Vega v. State*, 898 S.W.2d 359, 361 (Tex. App.—San Antonio 1995, pet. ref'd).

 Assuming arguendo that the trial court did not allow the defense sufficient amount of time to investigate this new information, a motion for continuance must be in writing, allege sufficient facts to show surprise, and be sworn to by the defendant. Tex.R.Civ.P. 252. None of this was done in this case. When a motion for continuance made during trial is not in writing and sworn to, error is not preserved. *Matamoros v. State*, 901 S.W.2d 470, 478 (Tex.Crim.App.1995). A refusal to grant a verbal motion for continuance is not reversible error on the part of the trial court. *Hightower v. State*, 629 S.W.2d 920, 925–26 (Tex.Crim.App.1981); *Ashcraft v. State*, 900 S.W.2d 817, 834 (Tex.App.—Corpus Christi 1995, no pet.).

Legate's fifth point of error is overruled.

### AUTOPSY PHOTOGRAPHS

 Legate alleges in his sixth and final point of error that the trial court erred in admitting autopsy photographs because their prejudicial effect far outweighed their probative value. Legate contends that there was no genuine issue in dispute that the photos could prove because Legate did not challenge the State's contention that a gunshot through the heart caused Garcia's death.

 The trial court's decisions concerning admission of evidence are held to an abuse of discretion standard. *Jones v. State*, 944 S.W.2d 642, 652 (Tex.Crim.App. 1996); *Coffin v. State*, 885 S.W.2d 140, 149 (Tex.Crim.App.1994). A trial judge is given wide discretion when deciding admissibility of photographs. *Sonnier v. State*, 913 S.W.2d 511, 519 (Tex.Crim.App.1995);

*Etheridge v. State*, 903 S.W.2d 1, 21 (Tex. Crim.App.1994). An abuse of discretion exists when the trial court's ruling falls outside of the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex.Crim.App.1990); *Ventroy v. State*, 917 S.W.2d 419, 423 (Tex.App.—San Antonio 1996, pet. ref'd). Rule 403 carries with it the presumption that relevant evidence will be more probative than prejudicial. *Jones*, 944 S.W.2d at 652; *see also* Tex.R.Evid. 403. Consequently, there must be a marked disparity between the evidence's prejudice and its probative value before the Rule 403 balancing test requires exclusion. *Jones*, 944 S.W.2d at 652.

The photographs in question are varied in content. One picture is taken from above, depicting Garcia's head and shoulders after he had been autopsied and a large, sutured incision extends from under his left arm to the center of his chest. This picture was used to show the gunshot's entrance wound. There was a close-up of the wound as well. The photos that Legate complains most strenuously about, however, concern photographs of Garcia's heart. There are two pictures of Garcia's heart, removed from his body, which were used at trial to demonstrate the entry and exit wounds made by the bullet. All of the photographs are in color. The trial court admitted each of these photographs into evidence, but refused to allow a fifth photo, due to its cumulative and potentially prejudicial nature.

 Legate is correct in saying that the photos prove very little other than what was already known: that Garcia was shot in the heart and died as a result. Defense counsel repeatedly objected to the introduction of the photographs, alleging that they were disproportionately prejudicial in nature. Tex.R.Evid. 403. A photo is admissible, however, if a verbal description of what is depicted in the photo is also

admissible. *Brown v. State,* 696 S.W.2d 913, 914 (Tex.Crim.App.1985); *Adams v. State,* 685 S.W.2d 661, 668 (Tex.Crim.App. 1985). Specifically, autopsy photographs are admissible unless they depict mutilations of the victim due to the autopsy itself. *Rojas v. State,* 986 S.W.2d 241, 249 (Tex.Crim.App.1998); *Santellan v. State,* 939 S.W.2d 155, 172 (Tex.Crim.App.1997). Conversely, photos that depict the nature, location, and extent of a wound have been declared probative enough to outweigh any prejudicial effects such photos may have on the jury, and are therefore properly admissible. *Etheridge,* 903 S.W.2d at 21; *Santellan,* 939 S.W.2d at 172. Because there is some probative value of the photos in helping the jury understand the nature of Garcia's wounds and given the wide discretion afforded a trial judge, Legate's sixth point of error is overruled.

CONCLUSION

The trial court's ruling is affirmed.