MEMORANDUM OPINION

No. 04-06-00095-CR


 Erik HERNANDEZ,

Appellant

v.

The STATE of Texas,

Appellee

From the 144th Judicial District Court, Bexar County, Texas

Trial Court No. 2005-CR-3280

Honorable Mark Luitjen, Judge Presiding





Opinion by: Alma L. López, Chief Justice



Sitting: Alma L. López, Chief Justice

 Catherine Stone, Justice

 Karen Angelini, Justice



Delivered and Filed: December 6, 2006



AFFIRMED



 A jury convicted Erik Hernandez of murder. On appeal, Hernandez challenges the sufficiency of the evidence to support
his conviction and contends that the trial court erred in admitting autopsy photographs of the victim. We affirm the trial
court's judgment. 





Background

 On the weekend of February 5, 2005, Erik Hernandez and his girlfriend, Shannon Cornette, were staying at the apartment
of Hernandez's cousin, Daniel Arellano. Hernandez lived with Arellano, and Cornette lived with a married couple, Aaron
and Benessa Lomax. On Saturday evening, Hernandez, Cornette, and Arellano went to a club and then returned to
Arellano's apartment. Cornette testified that she went to sleep but was awakened in the early morning hours when
Hernandez hit her in the face. He was angry about a call she had just received on her cell phone. Cornette testified that she
threw an air pump at Hernandez and then struck him in the back of the head with a flashlight. At this point, Arellano tried
to stop the fight. He told Cornette to leave. He and Hernandez threw Cornette's belongings onto the balcony outside the
front door of the apartment, and Hernandez pushed Cornette out through the doorway and shut the door after her. 

 Cornette had two cars parked in the parking lot, a company car and a Mustang that she was in the process of buying from
the Lomaxes. Hernandez had been using the Mustang. After carrying her belongings to her company car, Cornette called
Hernandez on his cell phone several times to ask him for the keys to the Mustang. She testified that she was concerned that
Hernandez would do something to the car. Hernandez testified that Cornette continually threatened him while they were on
the phone. He testified that she told him that somebody was going to come beat him up if he did not give her the keys.
Meanwhile, Cornette called Benessa Lomax to ask her if she had another set of keys to the Mustang. When Lomax said she
did not, Cornette and Lomax instead agreed that because the car was in Aaron Lomax's name, the Lomaxes would go to
where Cornette was and help her get the car towed. Benessa Lomax called her son, Thomas Russell, and asked him to join
her and her husband. She testified that she asked her son to come with them because she wanted him to make sure there
was no fighting or violence. Russell agreed to help. He brought his girlfriend, Sonja Cruz. Russell and Cruz were in one
vehicle, and Benessa and Aaron Lomax were in another. They all met in a restaurant parking lot. From there, Thomas and
Cruz followed the Lomaxes. 

 As they neared the apartment, Benessa Lomax testified that she was on the phone with Cornette getting directions to where
Cornette was outside the apartment. As they pulled up and stopped near where Cornette was standing, Hernandez ran
toward Russell's car and ran into the car door as Russell tried to open it. Russell got out of the car, and the two began
fighting with each other. Within minutes, Hernandez cut Russell's neck. Russell fell to the ground and was pronounced
dead sometime later. At no point did Russell have a weapon. 

 Hernandez testified that the reason he went outside was because Cornette told him over the phone that she was going to
break his car windows. He testified that when he went outside, he talked to Cornette, asking her to quiet down or come
inside. Cornette told him that he had messed up and that some people were going to beat him up if he did not give her the
keys to the Mustang. He testified that he did not know where the keys to the Mustang were. He asked her who was
coming, and she said "Tommy and them." Cornette told him that they were already there, and Hernandez heard cars coming
and saw two sets of headlights coming toward him. He testified that he was going to run back to the apartment and that
Cornette said "Don't be a coward." Hernandez could see Russell opening his door before Russell stopped his car, and
Hernandez testified he heard a female voice curse and call out for Russell to run over Hernandez. He stated that he was
afraid and that he instinctively ran toward Russell's car and pushed Russell's door closed. As he ran toward the car door, he
pulled out his pocket knife. He testified that when he got to the door, Russell cursed at him and threatened to beat him up.
They began fighting, and Hernandez could not get away because Russell stepped on his foot and the bottom of his pant leg.
As he pushed Russell away from him, he had his pocket knife in his hand, and the next thing he knew, Russell was bleeding
from his neck. When the first police car arrived on the scene, Hernandez flagged the officer down and was taken into
custody. 

 A medical examiner testified that the cut on Russell's neck was eight-and-a-half inches long. It was about a half-inch deep
on the right side of his neck and an inch-and-a-half deep on the left side of his neck. 

Sufficiency of the Evidence

 Hernandez contends that the evidence is legally and factually insufficient to support his conviction. Specifically, he
argues that the evidence is insufficient to justify the jury's implicit finding that he did not act in self-defense when he cut
Russell. See Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (stating that when a jury finds the defendant
guilty, there is an implicit finding against the defensive theory). In reviewing the legal sufficiency of the evidence of the
rejection of a self-defense claim, we view all the evidence in the light most favorable to the verdict and determine whether
any rational trier of fact could have found (1) the essential elements of the crime beyond a reasonable doubt and (2) against
the defendant beyond a reasonable doubt on the self-defense issue. Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App.
1991). The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their
testimony.Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). When reviewing the factual sufficiency of the
rejection of a defense, we review all the evidence in a neutral light and determine whether (1) the State's evidence taken
alone is too weak to support the finding and (2) whether the proof of guilt, although adequate if taken alone, is against the
great weight and preponderance of the evidence. Zuliani, 97 S.W.3d at 595. Our evaluation must not substantially intrude
upon the jury's role as the sole judge of the weight and credibility of witness testimony. Santellan v. State, 939 S.W.2d 155,
164 (Tex. Crim. App. 1997). 

 Here, Hernandez admitted that he ran toward Russell's car and that he pulled his knife out as he did so. He also admitted
that Russell did not have a weapon. He stated that he was going to run back to his apartment when the cars arrived, and that
Cornette said "Don't be a coward." He testified that he then instinctively ran toward the car when he heard someone call out
to run over him. He also testified that he "just didn't think about" running back to his apartment. In addition, he stated that
he did not intentionally use the knife, and that the cutting was an accident. On the basis of these facts, we hold that a
rational jury could find beyond a reasonable doubt that Hernandez did not act in self-defense when he cut Russell's throat. 

 We also hold that the evidence is factually sufficient to support the jury's implicit finding against Hernandez's self-defense
theory. Although Hernandez testified that he was scared when the two cars arrived, Hernandez, Cornette, Cruz, and the
Lomaxes all testified that Hernandez rantoward Russell's car. It is undisputed that Russell did not have a weapon and that
Hernandez knew Russell did not have a weapon. Hernandez testified that he heard a female voice call out to run over him,
but none of the other witnesses testified that they made such a threat or heard anyone else make it. Hernandez testified that
he was going to run back to his apartment, but he also testified that he "just didn't think about" it. Cornette testified that
Hernandez could have gone back to his apartment. Based on these facts, we cannot hold that the State's evidence taken
alone is too weak to support the verdict or that the proof of guilt is against the great weight and preponderance of the
evidence. Accordingly, Hernandez's sufficiency challenge is overruled.

Admissibility of Autopsy Photographs

 Hernandez contends that the trial court erred in overruling his objections to the admission of seven autopsy photographs of
Russell. Specifically, Hernandez argues that the photographs should have been excluded under Rule 403 of the Texas Rules
of Evidence (1) because their probative value was substantially outweighed by the danger of unfair prejudice. See Tex. R.
Evid. 403. When the trial court rules on a Rule 403 objection, we review the court's ruling under an abuse of discretion
standard. State v. Mechler, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). The test for whether the trial court abused its
discretion is whether the action was arbitrary or unreasonable. Id. We will not reverse a trial court's ruling that is within the
zone of reasonable disagreement. Id. at 440. Rule 403 favors the admission of relevant evidence and carries a presumption
that relevant evidence will be more probative than prejudicial. Shuffield v. State, 189 S.W.3d 782, 787 (Tex. Crim. App.
2006). In a Rule 403 analysis, we assess: (1) how probative the evidence is; (2) the potential of the evidence to impress the
jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the
proponent's need for the evidence. Id. In determining the prejudicial effect of photographs, courts may consider the number
of photographs offered; their gruesomeness, detail, and size; whether they are in color; whether they are taken close-up;
whether the person in the photograph is clothed; and any other factors unique to the situation. Id.; Long v. State, 823
S.W.2d 259, 270 (Tex. Crim. App. 1991). Autopsy photographs are generally admissible unless they depict mutilation
caused by the autopsy itself. Salazar v. State, 38 S.W.3d 141, 151 (Tex. Crim. App. 2001). 

 Each photograph at issue here depicts a different part of Russell's body. The photographs were used by the medical
examiner in describing Russell's injuries. The medical examiner used one photo to show abrasions on Russell's right knee,
another to describe an abrasion on his left knee, a third to show a linear abrasion on his chest, and two more to show that he
sustained no injuries to either of his hands. Hernandez particularly objects to the final two photos, one showing the fatal cut
in Russell's neck from the left side of his head and the other showing the cut from the right side. Hernandez suggests that
Russell's head was tilted backward due to the autopsy, making the cut appear wider in the photo taken from the left side.
However, there is nothing in the record or the photographs to support his contention. 

 Hernandez also specifically argues that the photographs should have been excluded because Russell's identity and cause of
death were undisputed and because the photos merely repeated facts that were already established. Evidence is relevant if it
tends to make the existence of any fact that is of consequence to the determination of the action more probable or less
probable than it would be without the evidence. Tex. R. Evid. 401. Here, the photos are relevant because Hernandez raised
the justification of self-defense, and the State disputed his claim. Hernandez testified that he pushed Russell away from him
in self-defense and did not realize that he was cutting Russell's throat as he did so. The photos are probative of the State's
theory that the killing was not committed in self-defense. The fact that the jury also heard testimony regarding Russell's
injuries does not necessarily reduce the relevance of the photographs showing the injuries. Shuffield, 189 S.W.3d at 787. 

 Turning to the Rule 403 balancing test, we hold that the probative value of the photos is not substantially outweighed by
the danger of unfair prejudice. Although the photos are in color, show an unclothed victim, and some are gruesome, these
factors alone do not require exclusion. See Sonnier v. State, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995) (affirming
admission of color photos depicting victims' bodies as discovered in bathtub filled with bloodied water, including close-up
photo of stab wound in victim's nude body); Legate v. State, 52 S.W.3d 797, 806, 807 (Tex. App.-San Antonio 2001, pet.
ref'd) (affirming admission of color photo depicting sutured incision extending from left arm to center of chest and color
photos depicting victim's heart, removed from body). In addition, gruesome photos need not be excluded where their
gruesomeness arises only from the nature of the crime and the injuries themselves. See Shuffield, 189 S.W.3d at
787-88;Sonnier, 913 S.W.2d at 519; Montgomery v. State, 198 S.W.3d 67, 78 (Tex. App.-Fort Worth 2006, pet. ref'd).
Because the photographs at issue are relevant and depict nothing more than the nature of Russell's injuries, we hold that the
danger of unfair prejudice does not outweigh their probative value. Thus, the trial court did not abuse its discretion in
admitting the photographs. 

Conclusion 

 The judgment of the trial court is affirmed. 



 Alma L. López, Chief Justice

DO NOT PUBLISH

1. Rule 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by
the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence." Tex. R. Evid. 403.