

Court Of Appeals

Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★  ★ ★ ★

**MEMORANDUM OPINION**

No. 04-07-00318-CR

Aron **BROWN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 05-1927-CR
Honorable Dwight E. Peschel, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Catherine Stone, Justice
Karen Angelini, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  June 25, 2008

AFFIRMED

Aron Brown was found guilty of committing four counts of aggravated sexual assault of a child and was sentenced to ninety-nine years of imprisonment. Brown was also found guilty of committing one count of indecency with a child and was sentenced to twenty years of imprisonment. On appeal, Brown brings a single issue: whether the trial court abused its discretion in admitting two photographs of the victim in evidence because the photographs were "prejudicial and irrelevant."

## BACKGROUND

Brown's daughter, M., is the victim. At trial, nine-year-old M. testified that when she was seven years-old, her father, Brown, had sex with her. According to M., the first time it happened, she was too young to go to school. According to M., the assaults occurred when she would visit her father in his home. M. specifically testified about a time when Brown was nude and called M. into the bathroom. Brown lifted M. and placed her on the bathroom counter so that she was sitting on the counter by the sink. He then put "a lotion" that he got from a shelf "on his weewee" and put "his weewee" inside of M.'s "front private." After Brown was done, he just stood next to the counter "wiping it off." According to M., Brown told her that what they had done was a secret and that she should not tell anyone. M. also testified about an incident during which Brown's "weewee" slipped outside her front private and was then placed in her "back private."

M. also testified that she had been abused by two other men: her mother's boyfriend and a cousin. According to M., her mother's boyfriend tried to "French kiss" her once or twice. Her cousin woke her and took her to the bathroom where he "put his weewee in [her] private."

Also at trial, Sandy Burge, an acquaintance of Brown, testified that when she saw M. crying on a swing at a barbecue, she approached M. and asked her why she was crying. M. replied that her father "had been touching her in her private parts." The following day, Burge called the police to report the alleged assaults.

Christy Williams of the Guadalupe County Children's Advocacy Center testified that she interviewed M. According to Williams, M. was able to give a lot of details about the alleged assaults.

Christina Salley, a sexual assault nurse examiner, testified that while taking M.'s history, M. spontaneously demonstrated different physical positions that she and her father used during the assaults. Salley testified that M. said her father had penetrated her vaginally, anally, and orally. According to Salley, M. also said that her mother's boyfriend penetrated her vaginally. During M.'s physical examination, Salley noted acute[1] trauma to the anus: a crescent shaped .24 centimeter tear. To document her findings, Salley took photographs of M.'s anal area. After being shown these photographs at trial, Salley testified that she took the photographs of M.'s anal area and that the photographs fairly and accurately depicted M.'s anal area on the date they were taken.

Dr. Nancy Kellogg later testified that she was familiar with M.'s medical records and the photographs taken by Nurse Salley. Not only did she testify about the same injury as Salley, but she also testified that the photographs depicted an older injury to the anal area. During her testimony, the two photographs at issue were admitted in evidence.

Guadalupe Sheriff's Investigator Robert E. Murphy arrested Brown and took two statements from him, both of which were admitted in evidence. In the first statement, dated September 12, 2005, Brown denied doing "anything sexual to my daughter." He stated that he believed M. was making these allegations because of something "done to her in the past by this Michael guy who is living with my ex-wife." Brown stated, "I think that [Michael] molested her, but because she got nowhere with the first outcry, she is making a second one blaming me in order to get some attention." In Brown's second statement, dated September 14, 2005, Brown admitted to putting his finger "down to her crotch area":

---

[1]Nurse Salley testified that "acute" meant that the injury "looked fresh."

About a year ago, [my ex-wife] was dropping the kids off with me at my place . . . . [N.], my youngest daughter, watched TV in the front of the trailer. [M.], my oldest daughter, came back to my bedroom, and she sat on my private area on my dick. [M.] did like a rocking motion on me, and I rolled to the side, and she fell off. Both of us had clothing on. It was not right; I don't know if she had ever done something like that before. It was like she knew what she was doing. This was in the summer, maybe August, but I am not sure of the exact date.

That's when it all started, I guess. When [M.] came in, I had my morning boner, and I got up and got out of bed. I didn't do anything to her that day. About a month or two months later was the first time that I stuck my finger down to her crotch area, and I don't remember if I put my finger inside, but I probably did. I just wanted to check and see if she was dirty, so I put my finger down there, and then brought it out and sniffed.

She had lost my trust at that point. I was suspecting that someone was doing something to her; [M.] was acting weird like she should not have been. I smelled my finger, and then went back to watching TV. [M.] didn't react; she did not act as if she did not want me to do it, but did not tell me not to do it.

The next time was two or three months later; I stuck my finger down her crotch. I don't think I put it inside her, but I rubbed it like you do a woman. I did not get aroused. It probably happened when we were watching TV. This happened on my days [that I got] her, on Sundays. It did not happen all the time; if she was [lying] just right, by that I mean she would [lie] in a position where I could touch her with her legs spread. She did not react; maybe she wanted me to do this, but she never told me to stop. I only did it four or five times at most. . . . My finger was all I ever used on [M.]; I never had sex with her, and I cannot recall ever doing anything else except touching her.

Brown also testified in his own defense. According to Brown, he explained that his daughters "had real bad toiletry bathroom habits" and that he was touching them just "to see if they're wiping or stinky." Brown claims that the police officers "took it the wrong way" and that he only signed the statement so that his "marijuana charges" would be "dropped." Brown testified, "I told them what they wanted to hear, so my drug charges would go away." These marijuana charges, however,

were related to a small amount of marijuana that could have resulted in him being charged with a misdemeanor.

## PHOTOGRAPHS

At trial, two photographs of M.'s anus were admitted in evidence over Brown's objection that the photographs were irrelevant and highly prejudicial. On appeal, Brown argues that the photographs were never authenticated as depicting M.'s anus. As a result, Brown contends that they are merely photographs depicting a child's anus and are not relevant to his alleged sexual assault of M. Additionally, Brown argues that the unauthenticated pictures of a child's anus were highly prejudicial and should have been excluded pursuant to Texas Rule of Evidence 403. Alternatively, Brown argues that even if the photographs were relevant, they still should have been excluded under Rule 403. We disagree.

A trial court's decision to admit photographs is reviewed under an abuse of discretion. *Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997). Thus, we reverse the trial court's decision to admit photographs only if the decision was outside the zone of reasonable disagreement. *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992).

Contrary to Brown's assertion, the photographs at issue were authenticated. Cristina Salley, a sexual assault nurse examiner, testified that she took the photographs of M.'s anal area to document her findings of a tear to the anus. She testified that the photographs fairly and accurately depicted M.'s anal area on the date that she took the photographs. The photographs, however, were not admitted until later, during Dr. Kellogg's testimony. Nevertheless, they were properly authenticated. Thus, they did not depict some random young girl's anus, but instead were shown to

depict an injury to the victim's anus. And, that the victim suffered an injury to her anus was relevant as the victim testified that Brown penetrated her anally. *See* TEX. R. EVID. 401.

Brown also argues that the photographs should have been excluded pursuant to Texas Rule of Evidence 403. Under Rule 403, all relevant evidence is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. Rule 403 carries with it the presumption that relevant evidence will be more probative than prejudicial. *Jones v. State*, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996); *Legate v. State*, 52 S.W.3d 797, 806 (Tex. App.—San Antonio 2001, pet. ref'd). Consequently, there must be a marked disparity between the evidence's prejudice and its probative value before the Rule 403 balancing test requires exclusion. *Legate*, 52 S.W.3d at 806. In considering whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice, we may consider, but are not limited to, the following: (1) the number of exhibits offered, (2) their gruesomeness, size, and detail, (3) whether they are in black and white or color, (4) whether they are close-up, (5) whether the body is naked or clothed, and (6) the availability of other means of proof and the circumstances unique to each case. *Williams*, 958 S.W.2d at 196. And, finally, photographs are generally admissible where verbal testimony about the same matters is admissible. *Jones*, 944 S.W.2d at 652; *Legate*, 52 S.W.3d at 807.

Brown argues that the admission of the photographs violated Rule 403 because their admission was "not necessary for Dr. Kellogg to explain her opinion of the medical diagnoses of M." Additionally, Brown emphasizes that Dr. Kellogg was not a fact witness but an expert witness

delivering an opinion. And, according to Brown, because Dr. Kellogg "never met the subject, she could not testify as to when the photographs were taken or who took the photographs or even if they are photographs of M.'s anus." Thus, Brown argues that the trial court abused its discretion in overruling his Rule 403 objection.

In so arguing, however, Brown completely omits the testimony of Nurse Salley. Nurse Salley testified that she found trauma to M.'s anal area, which she documented by taking the photographs in question. Dr. Kellogg was then asked to review these photographs and testified that in addition to the trauma found by Nurse Salley, she was able to "find additional injury." Thus, both Nurse Salley and Dr. Kellogg testified about injury to M.'s anal area. *See Jones*, 944 S.W.2d at 652 (explaining that photographs are generally admissible where verbal testimony about the same matters is admissible). Further, of the ten photographs authenticated by Nurse Salley, only two were admitted in evidence during Dr. Kellogg's testimony. These photographs were not gruesome or overly large in size. And, although Nurse Salley and Dr. Kellogg testified that M. suffered injuries to the anal area, that those two witnesses could point to the injuries through the photographs was helpful to the jury. Indeed, Dr. Kellogg testified that she needed the two photographs to adequately explain her findings.

Further, Brown's defense at trial was that M. had been sexually assaulted by someone else. When Nurse Salley testified about an acute injury to M., Brown argued that he could not have caused that injury because he had had no recent access to M. However, Dr. Kellogg testified that the photographs showed an *old injury* that would be consistent with penetration of the anus. Thus, Dr. Kellogg's testimony explained that M. could have been abused during a time in which Brown had

access to her. Therefore, the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice.

We hold that the trial court did not abuse its discretion in admitting the two photographs.

### CONCLUSION

Because the trial court did not abuse its discretion in overruling Brown's objections under Rules 401 and 403 to the photographs, we affirm the judgment of the trial court.

Karen Angelini, Justice

DO NOT PUBLISH