# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00020-CR

**Johnny Ray Barr, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
NO. D-1-DC-11-904043, THE HONORABLE MICHAEL LYNCH, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted Johnny Ray Barr of murder. *See* Tex. Penal Code § 19.02. He elected to have the trial court assess punishment, and the judge assessed his punishment at confinement for 60 years in the Texas Department of Criminal Justice. *See id.* § 12.42(d). In a single point of error on appeal, Barr complains about the admission of one of the autopsy photographs. In addition, through our own review of the record, we have found clerical errors in the written judgment of conviction. We will modify the judgment to correct the clerical errors and, as modified, affirm the judgment of conviction.

## BACKGROUND

Edna Nutall had been dating Barr for approximately three months when, on November 6, 2010 at approximately 11:00 p.m., she and her cousin, James Stewart, met up with Barr and then went together to the Airport Bar and Grill. At the club, Stewart spent most of the night

inside, but Barr and Nutall went outside together a few times. At closing time, Stewart left the club and found Nutall in the parking lot sitting in the passenger seat of her Explorer.[1] He saw blood on her lips. Nutall began crying and explained that Barr had struck her in the nose and punched her in the mouth.[2]

Stewart started to drive Nutall away in the Explorer but stopped just before exiting the parking lot when he saw Barr standing off to the right. Stewart exited the SUV to confront Barr about the assault of his cousin. Nutall also got out of the Explorer. During the confrontation at the back of the SUV, Barr pushed Nutall up against the Explorer and shot her in the face. Nutall fell into Stewart's arms. When police arrived on the scene, Stewart was in shock, cradling his cousin in his arms, repeatedly saying "he shot my cousin." He identified Barr as the person who shot his cousin. Nutall was taken by ambulance to the hospital where she died the next day.

After he shot Nutall, Barr fled the scene. He flagged down an acquaintance as he ran along the frontage road of Interstate 35, seeking a ride. He showed the occupants of the car a gun and told them he accidentally shot Nutall. After this disclosure, his friends refused to give him a ride. The day after the shooting, while Nutall was in the hospital, Barr called Nutall's sister and told her that he did not mean to shoot Nutall. He said that he intended to shoot her cousin, Stewart, but Nutall got in the way.

---

[1] The evidence showed that Nutall and Stewart drove her Explorer to meet Barr at a parking lot near downtown. The three of them then drove to the club together in her Explorer.

[2] Evidence at trial demonstrated discord in the relationship between Barr and Nutall. Testimony from Nutall's family indicated that she was attempting to end the relationship and planning to move to Houston. Other testimony showed that Barr expressed jealousy and frustration that night because he thought Nutall was "having a fling" with her ex-boyfriend.

2

At trial, the medical examiner testified that Nutall died from a gunshot wound inflicted on the left side of her forehead just above her left eyebrow. She also testified that the injuries, particularly stippling injuries on the skin around the entry wound, indicated that the gun was in close range, between two inches and three feet from Nutall's face, when the shot was fired.

The jury found Barr guilty of murder as charged in the indictment. Barr elected to have the trial court assess his punishment. He entered pleas of true to three enhancement paragraphs alleging four prior felony convictions. The trial judge found the enhancement allegations to be true and, pursuant to the habitual offender provision of the Penal Code, assessed Barr's punishment at confinement for 60 years in the Texas Department of Criminal Justice. *See* Tex. Penal Code § 12.42(d). This appeal followed.

## ADMISSION OF AUTOPSY PHOTOGRAPH

In his sole point of error, Barr contends that the trial court erred in admitting State's Exhibit 48, an autopsy photograph depicting the bullet lodged in the tissue at the back of Nutall's neck. He claims that the photograph should have been excluded because it was not relevant and the danger of unfair prejudice substantially outweighed any probative value.

*Standard of Review*

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Sandoval v. State*, 409 S.W.3d 259, 281 (Tex. App.—Austin 2013, no pet.); *see also Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007) ("The admissibility of a photograph is within the sound discretion of

3

the trial judge."). A trial court abuses its discretion only if its decision "lies outside the zone of reasonable disagreement." *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g); *Sandoval*, 409 S.W.3d at 281. We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's decision if it lies within the zone of reasonable disagreement. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009); *Sandoval*, 409 S.W.3d at 281. If the court's evidentiary ruling is reasonably supported by the record and correct on any theory of law applicable to that ruling, we will uphold the decision. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005); *Sandoval*, 409 S.W.3d at 297.

*Analysis*

To be admissible, evidence must be relevant. *See* Tex. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401.

Rule 403 of the Texas Rules of Evidence allows for the exclusion of otherwise relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010); *Gallo*, 239 S.W.3d at 762. "The term 'probative value' refers to the inherent probative force of an item of evidence—that is, how strongly it serves

4

to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Davis*, 329 S.W.3d at 806; *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). "'Unfair prejudice' refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Davis*, 329 S.W.3d at 806. All testimony and physical evidence are likely to be prejudicial to one party or the other. *Id.*; *Jessop v. State*, 368 S.W.3d 653, 694 (Tex. App.—Austin 2012, no pet.). Thus, "[t]o violate Rule 403, it is not enough that the evidence is 'prejudicial'—it must be *unfairly* prejudicial." *Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002). It is only when there exists a clear disparity between the degree of prejudice produced by the offered evidence and its probative value that Rule 403 is applicable. *Davis*, 329 S.W.3d at 806; *see Gayton v. State*, 331 S.W.3d 218, 227 (Tex. App.—Austin 2011, pet. ref'd).

Our analysis under Rule 403 includes, but is not limited to, the following factors: (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational yet indelible way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012); *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). In determining whether the probative value of a photograph is substantially outweighed by the danger of unfair prejudice, relevant factors include "the number of [photographs] offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close-up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the

5

individual case." *Davis v. State*, 313 S.W.3d 317, 331 (Tex. Crim. App. 2010); *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009).

State's Exhibit 48 appears in the record as an eight-by-ten-inch color photograph showing a close-up view of the tissue of the back of Nutall's neck and the bullet lodged therein.[3] The photograph was introduced during the testimony of Dr. Satish Chundru, Deputy Chief Medical Examiner for Travis County, who performed the autopsy. Exhibit 48 was one of only six autopsy photographs used by the State to show the fatal injury Nutall sustained and, as the trial court noted, the only one depicting the internal injury. The record reflects that these six photographs were culled from at least 50 or more autopsy photographs.

Barr argues that the photograph had no probative value and thus was not relevant. Specifically, he contends that the photograph lacked probative value because (1) he never contested that the cause of Nutall's death was a gunshot wound to the head, (2) he never contested that he shot Nutall, (3) there was an abundance of evidence showing Nutall was shot in the head, and (4) where the bullet came to rest was not probative of any issue the jury had to decide.[4] We disagree.

---

[3] The record does not reflect how the autopsy photographs were published to the jury. The prosecutor asked the medical examiner to use "this pointer" to highlight specific details on certain photographs, but the size of the images when displayed is unknown.

[4] We note that the record reflects that at trial Barr did not concede that he was the individual who shot Nutall. During opening statement, defense counsel argued

So, you got to wonder what happened. What really happened? Who really fired that shot? Could Stewart have had a gun? Could he have given it to one of the other two guys that were there? Could one of the other two guys have fired the shot and given it to [Barr]? These are things that we have to look at, and listen to the testimony of all the witnesses and decide what really happened out there[.]

The only witness who testified for the defense was a woman who was in the parking lot that

Under the indictment in this case, the State had the burden to prove that Barr intentionally or knowingly caused Nutall's death by shooting her with a firearm. *See* Tex. Penal Code § 19.02(b)(1) (providing that person commits offense of murder if he intentionally or knowingly causes death of another individual). Thus, the cause of Nutall's death (a gunshot wound to the head) and manner of death (homicide) were relevant. When testifying about cause of death and manner of death resulting from gunshot wounds, medical examiners often testify about the entrance wound, the exit wound, and the trajectory and path of the bullet. "[I]f verbal testimony is relevant, photographs of the same are also relevant." *Gallo*, 239 S.W.3d at 762; *see Williams v. State*, 937 S.W.2d 479, 488 (Tex. Crim. App. 1996) (holding that autopsy photographs are relevant to show manner and means of death); *Moreno v. State*, 1 S.W.3d 846, 857 (Tex. App.—Corpus Christi 1999, pet. ref'd) (same). Consequently, photographs that depict the nature, location, and extent of a wound have been declared probative enough to outweigh any prejudicial effect. *See*

---

night. She testified that she heard the gunshot, saw Nutall fall to the ground, and saw Nutall's cousin next to her but did not see anyone else nearby and did not see anyone flee the scene.

> During closing argument, defense counsel suggested that Barr was not the shooter:

> So, where is some of the lack of evidence in this case? The shell casing that was found, the .32, which temporarily is lost again, that was never processed or tested for fingerprints or DNA. Detective Sanchez admitted on cross-examination, that they do at times test that, but they didn't in this case. What would that have told you? Well, if it had someone else's DNA besides [Barr's], or someone else's fingerprint, whoever that might be, that would tell us that beyond a reasonable doubt he wasn't involved. If his print and DNA was on it, it would be the other way. Well, they didn't test it.

Thus, contrary to his assertion, the record reflects that at trial Barr did contest that he shot Nutall.

7

*Frank v. State*, 183 S.W.3d 63, 78 (Tex. App.—Fort Worth 2005, pet. ref'd); *Legate v. State*, 52 S.W.3d 797, 807 (Tex. App.—San Antonio 2001, pet. ref'd). Moreover, autopsy photographs are generally admissible unless they depict mutilation of the victim caused by the autopsy itself. *Williams*, 301 S.W.3d at 690; *Rayford v. State*, 125 S.W.3d 521, 529 (Tex. Crim. App. 2003); *see also Gallo*, 239 S.W.3d at 762 ("[A] visual image of the injuries appellant inflicted on the victim is evidence that is relevant to the jury's determination.").

We reject Barr's assertion that the complained-of photograph lacks probative value because (1) the evidence already established that Nutall died from the gunshot wound and (2) it was cumulative of the medical examiner's testimony. A photograph is generally admissible if verbal testimony about the matters depicted in the photograph is also admissible. *Paredes v. State*, 129 S.W.3d 530, 539 (Tex. Crim. App. 2004). The fact that photographs accompany oral testimony establishing the same facts does not render the photographic evidence cumulative or of weak probative value. *See Gallo*, 239 S.W.3d at 762 ("The fact that the jury also heard testimony regarding the injuries depicted [in the photograph] does not reduce the relevance of the visual depiction." ); *Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999) (recognizing that visual evidence accompanying testimony gives fact finder point of comparison to test credibility of witness and validity of his conclusions); *Williams*, 937 S.W.2d at 487 (autopsy photographs of murder victim admissible even if they merely corroborate other kinds of evidence).

Barr further argues that even if relevant, the probative value of the photo was substantially outweighed by unfair prejudice due to the "gruesomeness of the photo." He offers no further argument about the purported unfair prejudice. The autopsy photographs, including State's

Exhibit 48, were admitted for their usefulness in assisting the medical examiner's testimony. The photographs depict the nature, location, and extent of the wound as testified to by Dr. Chundru and thus had the effect of illustrating her testimony. *See Frank*, 183 S.W.3d at 79. State's Exhibit 48 did not receive any undue emphasis in terms of size, quality, or length of time it was displayed, nor was it emphasized during Dr. Chundru's accompanying testimony. Although the photograph is a color close-up of the tissue of the back of Nutall's neck, it is clinical in nature simply establishing the location of the bullet where it came to rest inside Nutall. It is not particularly gruesome or detailed, it is not enhanced in any way, and it portrays no more than the condition of Nutall due to the gunshot wound Barr inflicted. *See Young v. State*, 283 S.W.3d 854, 874–75 (Tex. Crim. App. 2009). The gruesomeness of the photograph, if any, is attributable to the subject matter it depicts, and the photograph is no more gruesome than would be expected in this sort of crime. *See Gallo*, 239 S.W.3d at 763. In other words, the complained-of autopsy photograph depicts what Barr caused and what Dr. Chundru's verbal testimony properly described. *See Saldano v. State*, 232 S.W.3d 77, 101–02 (Tex. Crim. App. 2007).

Under the circumstances of this case, we find that the trial court's decision to admit the complained-of photograph was within the zone of reasonable disagreement and was not an abuse of discretion. We overrule appellant's sole point of error.

## CLERICAL ERRORS IN JUDGMENT

However, we observe that the trial court's judgment of conviction contains clerical errors. First, the judgment reflects that the judgment was entered on December 8, 2011 when the record demonstrates that it was entered on December 9, 2011.

Second, the judgment states that the "Findings on Deadly Weapon" are "not applicable." However, the jury returned a verdict that found Barr "Guilty of the offense of murder, as alleged in the indictment." The indictment alleged that Barr intentionally or knowingly caused Nutall's death "by shooting her with a firearm." A firearm is a deadly weapon per se. *See* Tex. Penal Code § 1.07(17)(A) (defining "deadly weapon" as "a firearm"). When a jury is the fact finder, an affirmative deadly weapon finding is made when the weapon alleged in the indictment is a deadly weapon per se and the verdict states that the defendant is guilty "as charged in the indictment." *Lafleur v. State*, 106 S.W.3d 91, 95 (Tex. Crim. App. 2003) (applying *Polk v. State*, 693 S.W.2d 391, 396 (Tex. Crim. App. 1985)). Accordingly, the jury made an affirmative deadly weapon finding.

Third, the judgment indicates that the pleas to the enhancement paragraphs and the findings on the enhancement paragraphs were "not applicable." However, the record reflects that at the punishment hearing Barr entered pleas of "True" to the enhancement paragraphs alleged in the State's *Notice of Enhancement Paragraphs*. The trial court explicitly found the allegations in the notice to be true, indicating that his findings "[made] this a habitual offense."

This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 46.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Since the necessary information is available here, we modify the judgment of conviction to reflect that the "Date Judgment Entered" was December 9, 2011, and that the "Findings on Deadly Weapon" were "YES, A FIREARM." We further modify the judgment to reflect that the pleas to the "1st Enhancement Paragraph" and "2nd Enhancement/Habitual

Paragraph" were "TRUE" and to reflect that the findings on the "1st Enhancement Paragraph" and "2nd Enhancement/Habitual Paragraph" were "TRUE."

**CONCLUSION**

Finding no abuse of discretion in the admission of State's Exhibit 48, we modify the judgment of conviction as noted above and affirm the judgment as modified.

_____
Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Goodwin, and Field

Modified and, as Modified, Affirmed

Filed:  February 14, 2014

Do Not Publish