02-10-436-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00436-CR

 

 


 
 
 David Lee Malone
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 355th
District Court OF Hood COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

Introduction

          Appellant
David Lee Malone appeals his conviction for murder.  We affirm.

          The
record shows that Appellant intervened in a fight between his sister and his father,
George Malone, and that he repeatedly kicked and punched his father in the head,
causing brain injury to which the eighty-two-year-old man succumbed after a week
and a half in the hospital.  A jury found Appellant guilty of murder and
assessed his punishment at ninety-nine years’ confinement; the trial court
sentenced him accordingly.  Appellant brings six issues on appeal.

Protective
Order Evidence

          In
his first issue, Appellant contends that the trial court abused its discretion by
admitting evidence that George had sought a protective order against him
because the evidence was “tantamount” to extraneous offenses.

          Appellant’s
objections in the trial court, however, raised only hearsay and relevancy grounds. 
An objection preserves only the specific ground cited.  Tex. R. App. P.
33.1(a)(1)(A); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App.
1998) (op. on reh’g), cert. denied, 526 U.S. 1070 (1999); Bell v.
State, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), cert. denied, 522
U.S. 827 (1997).  Appellant’s hearsay objection obviously does not comport with
his claim that the trial court erred by admitting evidence of extraneous
offenses.  See, e.g., Camacho v. State, 864 S.W.2d 524, 533 (Tex. Crim. App.
1993), cert. denied, 510 U.S. 1215 (1994) (holding that hearsay and
relevancy trial objections did not preserve a rule 404(b) extraneous offense
claim on appeal).

          Further,
the court of criminal appeals has made it clear that relevancy objections do
not preserve extraneous offense claims for review.  Medina v. State, 7
S.W.3d 633, 643 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1102 (2000);
see Starn v. State, No. 02-07-0039-CR, 2008 WL 902792, at *2 n.13 (Tex.
App.—Fort Worth Apr. 3, 2008, no pet.) (mem. op., not designated for
publication); Bradshaw v. State, No. 02-06-00194-CR, 2006 WL 3334326, at
*1 (Tex. App.—Fort Worth Nov. 16, 2006, no pet.) (mem. op., not designated for
publication); Ashford v. State, No. 02-04-00594-CR, 2006 WL 908754, at
*6 (Tex. App.—Fort Worth Apr. 6, 2006, pet. ref’d) (mem. op., not designated
for publication).

          Article
38.36(a) of the code of criminal procedure provides that

[i]n all prosecutions
for murder, the state or the defendant shall be permitted to offer testimony as
to all relevant facts and circumstances surrounding the killing and the
previous relationship existing between the accused and the deceased, together
with all relevant facts and circumstances going to show the condition of the
mind of the accused at the time of the offense.

Tex.
Code Crim. Proc. Ann. art. 38.36(a) (West 2005).[2]  As the court of criminal
appeals acknowledged in Garcia v. State, “The nature of the relationship—such
as whether the victim and the accused were friends, were co-workers, were
married, estranged, separated, or divorcing—is clearly admissible under this Article.” 
201 S.W.3d 695, 702 (Tex. Crim. App. 2006), cert. denied, 549 U.S. 1224
(2007).

          To
the extent that Appellant argues the evidence should have been excluded on
relevancy grounds, we hold that it was within the trial court’s discretion to
conclude that evidence that George had sought a protective order against the
defendant on trial for George’s murder was relevant to a number of material
issues in the case—including the facts and circumstances surrounding the
killing, the prior relationship between George and the defendant, the latter’s
state of mind, and the identity of the killer.[3]  Accordingly, we overrule
Appellant’s first issue.

Confrontation
Clause

          In
his second issue, Appellant claims that the trial court erroneously admitted
testimonial hearsay in violation of the Confrontation Clause when it allowed an
emergency medical technician (EMT) who treated George at the scene to testify
that when she asked George about one of his injuries, he replied, “He kicked me.” 
Alternatively, Appellant argues that if this testimony did not violate his
rights under the Confrontation Clause, the trial court abused its discretion by
admitting it because it was inadmissible hearsay.

          Although
the State addressed Appellant’s Sixth Amendment claim at trial, in its brief it
addresses only the hearsay argument, countering it by citing the medical
diagnosis exception to the hearsay rule found in rule 804(4).[4] 
We agree with the State that this exception applies to George’s response to the
EMT’s question about how he became injured.  See Bautista v. State, 189
S.W.3d 365, 368 (Tex. App.—Fort Worth 2006, pet. ref’d); Beheler v. State,
3 S.W.3d 182, 188 (Tex. App.—Fort Worth 1999, pet. ref’d).  But this exception to
the hearsay rule does not resolve the constitutional issue.  See De
La Paz v. State, 273 S.W.3d 671, 676, 680 (Tex. Crim. App. 2008).

          The
Confrontation Clause of the Sixth Amendment to the United States Constitution,
applicable to the states through the Fourteenth Amendment, provides that “[i]n
all criminal prosecutions, the accused shall enjoy the right . . . to be
confronted with the witnesses against him[.]”  U.S. Const. amend. VI; Pointer
v. Texas, 380 U.S. 400, 406, 85 S. Ct. 1065, 1069 (1965).  In accordance
with this constitutional right, out-of-court statements offered against the
accused that are “testimonial” in nature are objectionable unless the
prosecution can show that the out-of-court declarant is presently unavailable
to testify in court and the accused had a prior opportunity to cross-examine
him.  Crawford v. Washington, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374
(2004); Langham v. State, 305 S.W.3d 568, 575–76 (Tex. Crim. App. 2010);
Wall v. State, 184 S.W.3d 730, 734–35 (Tex. Crim. App. 2006).  The
United States Supreme Court has yet to define the outer boundaries of a
“testimonial” out-of-court statement, but it has identified three kinds of
statements that could be regarded as “testimonial.”  Langham, 305 S.W.3d
at 576; Wall, 184 S.W.3d at 735.  They are ex parte in-court testimony
or its functional equivalent—that is, materials such as affidavits, custodial
examinations, prior testimony that the accused was unable to cross-examine, or
similar pretrial statements that declarants would reasonably expect to be used
prosecutorially; extrajudicial statements contained in formalized testimonial
materials, such as affidavits, depositions, prior testimony, or confessions;
and statements that were made under circumstances which would lead an objective
witness reasonably to believe that the statement would be available for use at
a later trial.  Melendez-Diaz v. Massachusetts, ___ U.S.___, 129 S. Ct.
2527, 2531 (2009) (quoting Crawford, 541 U.S. at 51–52, 124 S. Ct. at
1364); Langham, 305 S.W.3d at 576; Wall, 184 S.W.3d at 735–36.

          With
respect to this last category of out-of-court statements, and in the particular
context of statements made in response to police inquiries, in Davis v.
Washington the Supreme Court elaborated that such a statement is
“testimonial” if the circumstances, viewed objectively, show that it was not
made “to enable police assistance to meet an ongoing emergency” and “the
primary purpose of the interrogation is to establish or prove past events potentially
relevant to later criminal prosecution.”  547 U.S. 813, 822, 126 S. Ct. 2266,
2273–74 (2006).

          The
court of criminal appeals has said that whether a particular out-of-court
statement is testimonial is “a question of law.”  Langham, 305 S.W.3d at
576; De La Paz, 273 S.W.3d at 680.  Although we defer to the trial court’s
resolution of credibility issues and historical fact, we review de novo the
ultimate constitutional question of whether the facts as determined by the
trial court establish that an out-of-court statement is testimonial.  Langham,
305 S.W.3d at 576; Wall, 184 S.W.3d at 742.  In making that judgment, we
look to determine whether “the surrounding circumstances objectively indicate
that the primary purpose of the interview or interrogation is to establish or
prove past events potentially relevant to later criminal prosecution.”  Langham,
305 S.W.3d at 576; De La Paz, 273 S.W.3d at 680.

          Applying
these principles to George’s response to the EMT’s on-the-scene question about
the origin of his injuries, we conclude that the statement, “He kicked me” was
not testimonial for Confrontation Clause purposes.  The primary purpose behind
this statement was not to provide testimony or develop facts for later
litigation, but to provide information to medical personnel who were treating
George’s emergent medical needs on the scene[5].
 Viewed objectively, George’s statement to the EMT was made to enable
assistance to meet an ongoing emergency and not to establish or to prove past
events potentially relevant to later criminal prosecution.  See Davis, 547
U.S. 813 at 822, 126 S. Ct. at 2273–74; see also Vinson v. State,
252 S.W.3d 336, 339–41 (Tex. Crim. App. 2008) (recognizing that statements made
during an emergency are nontestimonial because they are not made primarily to
develop facts for later litigation but to decide how to appropriately respond
to the emergency).  Therefore, because the statement was nontestimonial in
nature and did not affect Appellant’s rights under the Confrontation Clause,
the trial court did not err by admitting it in evidence.  Accordingly, we
overrule Appellant’s second issue.

Autopsy
Photograph

          In
his third issue, Appellant contends that the trial court abused its discretion
by admitting an autopsy photograph.  Specifically, he claims that State’s
Exhibit 57, a photograph depicting George’s brain after it was removed from his
body, was unfairly prejudicial and therefore should have been excluded under
rule of evidence 403.

          Rule
403 provides:  “Although relevant, evidence may be excluded if its probative
value is substantially outweighed by the danger of unfair prejudice, confusion
of the issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence.”  Tex. R. Evid. 403; see
Gigliobianco v. State, 210 S.W.3d 637, 640 (Tex. Crim. App. 2006).  Rule
403 favors the admission of relevant evidence and carries a presumption that
relevant evidence will be more probative than prejudicial.  Shuffield v.
State, 189 S.W.3d 782, 787 (Tex. Crim. App.), cert. denied, 127 S.
Ct. 664 (2006).  Among the many factors a court may consider in determining
whether the probative value of photographs is substantially outweighed by the
danger of unfair prejudice are the number of exhibits offered, their
gruesomeness, their detail, their size, whether they are in color or
black-and-white, whether they are close up, whether the body depicted is
clothed or naked, the availability of other means of proof, and other
circumstances unique to the individual case.  Santellan v. State, 939
S.W.2d 155, 172 (Tex. Crim. App. 1997); Long v. State, 823 S.W.2d 259,
272 (Tex. Crim. App. 1991), cert. denied, 505 U.S. 1224 (1992).  The
admissibility of photographs over an objection is within the sound discretion
of the trial court.  Sonnier v. State, 913 S.W.2d 511, 518 (Tex. Crim. App.
1995).  Autopsy photographs are generally admissible, unless they depict
mutilation of the victim caused by the autopsy itself.  Salazar v. State,
38 S.W.3d 141, 151 (Tex. Crim. App.), cert. denied, 534 U.S. 855 (2001);
Santellan, 939 S.W.2d at 172.  The removal of internal body parts to
portray the extent of injury to the body part itself is not considered
mutilation caused by the autopsy because there is no danger that the jury would
mistakenly attribute the removal of body parts to the defendant.  Salazar,
38 S.W.3d at 151–52.

          Dr.
Shiping Bao, the medical examiner who performed the autopsy, testified that the
photograph of George’s brain would help him explain the injury that caused George’s
death.  He testified that the photograph showed fatal hemorrhaging on the left
occipital or rear lobe of the brain where blunt force trauma had caused it to
strike the inside of the skull and that the resulting swelling had shifted the
brain off its midline position.  Thus, the photograph had probative value
because it showed the extent of George’s injury.  Further, it was probative
because it helped the jury understand how blunt force trauma—which other
evidence showed came in the form of Appellant’s having kicked George in the
head—caused George’s death.

          Appellant
discounts the probative value of the photograph by arguing that Dr. Bao merely
used it to pinpoint the location of the injury, to which he and another
witness, Dr. William Witham, had already testified.  But the court of criminal
appeals has rejected the premise that visual evidence accompanying oral
testimony is either cumulative of oral testimony or of insignificant probative
value.  Chamberlain v. State, 998 S.W.2d 230, 237 (Tex. Crim. App.
1999), cert. denied, 528 U.S. 1082 (2000).  To the contrary, the court
has recognized that visual evidence accompanying testimony is most persuasive
and often gives the fact finder a point of comparison against which to test the
credibility of a witness and the validity of his conclusions.  Id.

          Still,
Appellant argues that whatever probative value the photograph has is minimal,
at best, and that in any event, its probative value is substantially outweighed
by the danger of unfair prejudice.  We disagree.

          Although
the photo is graphic—it shows George’s brain separated from the rest of his
body—this factor alone does not require exclusion.  See Salazar, 38
S.W.3d at 151, 153 (affirming admission of color slides showing brain removed
from cranial cavity, victim’s lung removed from body, and victim’s open and
dissected heart removed from body); Legate v. State, 52 S.W.3d 797, 806,
807 (Tex. App.—San Antonio 2001, pet. ref’d) (affirming admission of color
photos depicting victim’s heart removed from body).

          Moreover,
the medical examiner used the photograph to explain to the jury the fatal
injury George sustained.  Even photographs depicting “mutilation” by the
medical examiner may still be admissible, and therefore excepted from the
general prohibition, when the resulting picture (such as a photo of an organ
that has been removed from the body) shows bruising or other damage that is
attributable to the defendant’s actions, but was not visible externally,
thereby making the photograph highly relevant to the manner of death.  Ripkowski
v. State, 61 S.W.3d 378, 392–93 (Tex. Crim. App. 2001), cert. denied,
539 U.S. 916 (2003); see also Salazar, 38 S.W.3d at 150–53.

          Because
the photograph at issue has probative value and is not unnecessarily gruesome,
we hold that the danger of unfair prejudice does not outweigh its probative
value.  Thus, the trial court did not abuse its discretion in admitting it in
evidence.  Accordingly, we overrule Appellant’s third issue.

Lesser-Included
Offenses

          In
his fourth issue, Appellant contends that the trial court erred by failing to
include lesser-included-offense instructions on criminally negligent homicide and
aggravated assault in the charge.  At the charge conference, however, neither
side proposed any special instructions or requested lesser-included-offense
instructions, and the only objection Appellant raised was that the charge
allowed for the jury to separate their votes on three paragraphs and therefore created
the risk of a nonunanimous verdict.

          The
trial court need not submit a lesser-included instruction sua sponte if
neither side requests one.  Delgado v. State, 235 S.W.3d 244, 249–50
(Tex. Crim. App. 2007); Mashburn v. State, 272 S.W.3d 1, 15 (Tex. App.—Fort
Worth 2008, pet. ref’d).  Moreover, the defense may not claim error
successfully on appeal due to the omission of a lesser-included-offense instruction
if the defense did not request one.  Delgado, 235 S.W.3d at 250; Mashburn,
272 S.W.3d at 15.

          Appellant
acknowledges that he did not object to the charge or request an instruction but
argues that we should nonetheless apply the egregious harm standard of Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).  This argument,
however, suffers the same flaw in reasoning as that relied upon by the court of
appeals in Tolbert v. State, 306 S.W.3d 776, 777 (Tex. Crim. App. 2010). 
In that case, the court of criminal appeals corrected the court of appeals for
assuming error in a charge that did not contain a lesser-included-offense
instruction that the appellant never requested.

The court of appeals’
opinion appears to assume that the trial court erred in not sua sponte
instructing the jury on the lesser-included offense of murder and then
addressed whether this jury-charge “error” egregiously harmed appellant under Almanza
after rejecting the State’s estoppel argument based on appellant’s statement
that she had “no objection” to the jury charge. This was error. Before applying
Almanza’s egregious-harm standard for unobjected-to jury charge error,
the court of appeals should have first decided whether it was “error” for the
trial court not to sua sponte instruct the jury on the lesser-included
offense of murder. 

Id. at
779 (citations omitted).

          The
court went on to hold that the trial court had no duty to sua sponte
instruct the jury on a lesser-included offense, that such an instruction was
not law applicable to the case absent a request by the defense, and that, consequently,
there was no jury-charge “error” to which Almanza would apply.  Id. at
781–82.  The same is true here.

          Because
the trial court had no duty to sua sponte instruct the jury on the lesser-included
offenses when Appellant only now, for the first time, claims he was entitled to
such instructions, the trial court did not err by not including them in the
charge.  Accordingly, we overrule Appellant’s fourth issue.

Prior
Unadjudicated Bad Acts

          In
his fifth issue, Appellant complains of the State’s cross-examining him about
prior unadjudicated acts of family violence as set out below:

Q. [by the district
attorney]  Well, Mr. Malone, you said you’ve been in jail for DWI, correct?

 

A.  Yes, sir.

 

Q.  And your lawyer
asked you several different times in several different ways what you’ve been
arrested for and what you’ve been in jail for.  Do you remember that?

 

A.  Sir?

 

Q.  Remember, she
asked you several times what you’d been in jail for?

 

A.  Right.

 

Q.  And you said
DWIs, a couple of them.

 

A.  Yes, sir.

 

MS. WALKER:  Your
Honor, I would object on that.  What I asked him for was what he had been
convicted of, and I specifically was real clear about that, what he had been
convicted of.

 

          Actually,
although counsel did ask her client about convictions, she also specifically
asked, “were you ever in jail?” and “what have you been in jail for?”[6] 
And when the prosecutor objected to this inquiry, Appellant’s counsel responded
that the information was admissible and would “come out on cross.”

          After
the trial court overruled Appellant’s objection, the State’s cross examination
continued as follows: 

Q.    (BY MR.
CHRISTIAN) Remember being arrested in Arlington for aggravated assault?

 

A.    No,
sir.

Q.    That
didn’t happen?

A.    Not
that I recall, no.

Q.    How about in
Hood County for family violence assault, you get arrested for that? 

 

A.    I
don’t think so, not – – not to my knowledge.

Q.    Well, don’t you
think that being arrested and put in jail for   family violence assault is
something that a person would remember?

 

A.    That’s what I’m
saying.  I – – I can’t remember.  That’s you know, that’s why I don’t say that
I – –

 

Q.  Who’s – – who’s
Linda Gail Malone?

 

A.    Who?

 

Q.    Linda Gail
Malone?

 

A.    Linda Gail
Malone?  That was my first wife.

 

Q.    Right.  She
wasn’t the victim in one of these family violence assaults?

 

A.  Not that I
recall, no.

 

Q.    Just forgot
about it, if it happened?

 

A.    If it happened,
I don’t remember it, no, sir.

 

Q.    You would agree
with me that – – nobody would be that better position[ed] to know if you’ve
been arrested two times for assault, once a felony, other than you, you would
know better than anybody.

 

MS. WALKER:   Your
Honor, objection.  He’s asked and answered twice now.

 

THE COURT: 
Overruled.

 

A.    Well, I – – I –
– I don’t recall.  I – – I’m – – I’m telling the truth here.  I do not recall.

 

Q.    (BY MR.
CHRISTIAN)  And you think it’s – – is it possible that you could have been in
jail for these assaults and you just don’t remember?  Is that what you’re
telling us?

 

A.    I don’t
recall.  Yes, sir.  It – – I don’t know.  I really – – really don’t know.

 

Q.    All right.  But
do you recall the DWIs?

 

A.    Yes, sir.

 

          A
complaint made on appeal must comport with the complaint made in the trial
court or the error is forfeited.  Pena v. State, 285 S.W.3d 459, 464
(Tex. Crim. App. 2009).  An objection preserves only the specific ground
cited.  Tex. R. App. P. 33.1(a)(1)(A); Mosley, 983 S.W.2d at 265; Bell,
938 S.W.2d at 54; see also Fierro v. State, 706 S.W.2d 310, 317–18 (Tex.
Crim. App. 1986) (holding that general objection is insufficient to apprise
trial court of complaint urged and thus preserves nothing for review).  Further,
with a couple of exceptions for circumstances that are absent in this case, to
preserve error, a party must continue to object each time the objectionable
evidence is offered.  Martinez v. State, 98 S.W.3d 189, 193 (Tex. Crim.
App. 2003) (citing Ethington v. State, 819 S.W.2d 854, 858 (Tex. Crim.
App. 1991)); Fuentes v. State, 991 S.W.2d 267, 273 (Tex. Crim. App.), cert.
denied, 528 U.S. 1026 (1999).  A trial court’s erroneous admission of
evidence will not require reversal when other such evidence was received
without objection, either before or after the complained-of ruling.  Leday
v. State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).

          The
record before us shows that Appellant objected to the State’s cross examination
on two grounds:  (1) that the prosecutor was mischaracterizing a question asked
on direct and (2) that a question had been asked and answered.  Appellant’s
claims on appeal assert that the trial court violated rules of evidence 403,
404(b), 608(b), and 609(a).  These claims do not comport with the objections
Appellant raised at trial.  Accordingly, we overrule Appellant’s fifth issue.  See
Pena, 285 S.W.3d at 464.

Local
Rules

          In
his sixth issue, Appellant asserts that his conviction should be reversed
because the trial court violated one of its own local rules by admitting an
aerial photograph that Appellant allegedly had not received before trial and
that showed the same area as other aerial photographs admitted during trial without
objection.

          Appellant
contends that the trial court violated Local Rule 7.3, which provides:

At
the time the parties report for trial they will deliver to the Court, the Court
Reporter and the other parties a witness list and exhibit list and any motion
in limine.  Any witnesses or exhibits not shown on such list can be used at the
trial only upon leave of the Court.  Prior to commencement of trial all
exhibits will be marked, exchanged and examined by counsel so that the trial
will not be delayed by such examination.

355th
(Tex.) Dist. Ct. Loc. R. 7.3 (Hood County).

          Appellant
claims he “never received” Exhibit 42, which we take to be a complaint that the
provision in Local Rule 7.3 that “all exhibits will be marked, exchanged
and examined by counsel” was not complied with.  As pointed out by the State,
the only evidence in the record that Exhibit 42 was not exchanged with counsel
is Appellant’s trial counsel’s telling the trial court, “Your Honor, we object
on the grounds we never received this document.”  But assuming without deciding
that this is sufficient to show a violation of Local Rule 7.3, and putting
aside for the moment the issue of harm, we are not sure we agree with Appellant’s
proposed remedy, which is a reversal of his conviction for murder.

          Appellant
has provided us no cases overturning criminal convictions on the basis of a
local rule requiring similar “exchange and examination” of exhibits before
trial.  The two cases cited in Appellant’s brief are original proceedings in
which the appellants sought and were granted mandamus relief in civil cases.  See
Dancy v. Daggett, 815 S.W.2d 548 (Tex. 1991) (orig. proceeding); Crane
v. Tunks, 160 Tex. 182, 328 S.W.2d 434 (1959) (orig. proceeding).[7]

          We
think mandamus is a radically different remedy than reversal of a criminal
conviction.  We need not decide that particular issue in this case, however,
because no criminal conviction may be reversed for nonconstitutional error
absent violation of a substantial right of the defendant.  Tex. R. App. P.
44.2(b).  Appellant does not allege that the trial court violated any provision
of the federal or state constitution; only a local rule.  Therefore the
applicable harm analysis would be that for nonconstitutional error set out in
rule 44.2(b), and, if there was error, it should be disregarded absent effect to
Appellant’s substantial rights.  Tex. R. App. P. 44.2(b).

          We
have examined the complained-of photograph.  It is a satellite photograph that
is practically identical to other satellite photographs admitted at trial
without objection.  The only difference is that this particular satellite photograph
has scaling and a compass to indicate directions.  Appellant has not made any
argument that admission of this photograph with these two additions has caused
him harm while admission of other similar photographs without the additions have
not.  Having examined the complained-of exhibit and compared it with other
similar exhibits and having examined the record as a whole, we hold that
admission of the exhibit, even if it were error, had no effect on any of
Appellant’s substantial rights.  Accordingly, we overrule Appellant’s sixth
issue.

Conclusion

          Having
overruled all of Appellant’s issues, we affirm the trial court’s judgment.

 

 

LEE GABRIEL
JUSTICE

 

PANEL: 
WALKER,
MEIER, and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  October 27, 2011









[1]See Tex. R. App. P. 47.4.





[2]Evidence that is otherwise
admissible under this article is still subject to the limitations provided by
rule of evidence 404(b).  We do not address whether there was a rule 404(b)
violation in this case because, as indicated above, Appellant did not preserve
that issue for review.





[3]Appellant took the stand
in his own defense and testified that his sister caused his father’s fatal
injuries, not he.





[4]The rule provides an
exception from the hearsay rule for “[s]tatements made for purposes of medical
diagnosis or treatment and describing medical history, or past or present
symptoms, pain, or sensations, or the inception or general character of the
cause or external source thereof insofar as reasonably pertinent to diagnosis
or treatment.”  Tex. R. Evid. 803(4).





[5]The court of criminal
appeals has held that in this context, “primary” means “the purpose that is
first among all competing purposes in rank or importance.”  See Langham,
305 S.W.3d at 579 (internal quotation marks omitted).





[6]Appellant testified on
direct as follows:

MS. WALKER [for the defense]:  Sir, were you ever in
jail?

A. [Appellant]:  Whoo—

MR. CHRISTIAN [the district attorney]:  Objection,
relevance,    Your Honor.

MS. WALKER:  Your Honor, it’s a question about his
history.     It’s going to come out on cross.

THE COURT:   Overruled.

A.  Yes, ma’am.

Q.  (BY MS. WALKER)  And what have you been in jail
for?

A.  I had a – – couple of DWIs, misdemeanors.

Q.  Okay.  Sir, dating back to 1983, does that sound
familiar?

A.  Exactly, yes, ma’am.

Q.  1984?

A.  Yes, ma’am.

Q.  Now, what else, sir, do you remember?

A.  I’ve been to jail for?

Q.  Well, I’m asking you any other convictions that you
recall.

A.  Two – – the DWIs, misdemeanors, – –

Q.  Correct.

A. – – and I – – I’m wanting to say the last time I was
in jail        was probably – – whoo – – I’m wanting to say nine, ten years         ago,
I think I’m – –

Q.  Okay.

A.  I’m not exactly sure.

Q.  All right.  And so – –

A.  But it was for a – – a – – a – –

Q. Sir, what I’m asking you about,
though, are convictions.  All right?  And so you know you’ve got these DWI
convictions, and that’s all you’ve got?

A.  Yes, ma’am.

Q. All right.  And, of course, you’ve
got this arrest.

A.  Yes, ma’am.  And I’ve had a PI,
too, though.

Q. Public intox?

A.  Yes, ma’am.





[7]In Dancy, the trial
court conducted a hearing in a divorce action, knowing that the attorney
representing the husband had to appear in another court.  See Dancy, 815
S.W.2d at 549.  The Texas Supreme Court found that the trial court had violated
a local rule regarding conflicts in docket settings, which effectively denied
the husband representation during the divorce hearing.  The remedy sought and
provided was mandamus relief, not reversal.  In Crane, the Texas Supreme
Court conditionally granted mandamus to require the trial court to examine the
defendant’s income tax return and determine which parts were relevant and
material before requiring the defendant to produce the return for examination
and copying by plaintiff.  328 S.W.2d at 440–41.